IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STEVE LUNDBORG, | ) | CV NO 09-00544 DAE KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MAUI COUNTY, CHIEF OF | ) | |
| POLICE FOR MAUI COUNTY | ) | |
| THOMAS PHILLIPS, MOANA M. | ) | |
| LUTEY, JOHN/JANE DOE MAUI | ) | |
| COUNTY POLICE EMPLOYEES | ) | |
| #1-20, AND OTHER JOHN/JANE | ) | |
| DOE EMPLOYEES #1-20 OF | ) | |
| MAUI COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT; AND (2) DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S STATE LAW CLAIM

On September 24, 2010, the Court heard Defendants Maui County,

Chief of Police for Maui County Thomas Phillips, and Moana M. Lutey's

(collectively, "Defendants") Motion for Summary Judgment. (Doc. # 45.)

Michael G.M. Ostendorp, Esq., appeared at the hearing on behalf of Plaintiff Steve

Lundborg; Richard B. Rost, Esq., appeared at the hearing on behalf of Defendants.

After reviewing the motion and the supporting and opposing memoranda, the Court

**GRANTS IN PART** and **DISMISSES WITHOUT PREJUDICE** Plaintiff's state

law claim.

BACKGROUND

This case arises from Plaintiff Steve Lundborg's ("Plaintiff") attempt

to acquire a firearm in Maui County.  In 1999, Plaintiff applied for a firearm permit

at the Maui Police Department, and Maui's Chief of Police Thomas Phillips

("Chief Phillips") denied Plaintiff's application.  (Plaintiff's Concise Statement of

Facts "PCSF," Doc. # 52, Ex. 1.)  Plaintiff's application was denied due to a 1986

conviction for reckless endangerment, a misdemeanor, in the state of Colorado.

(Defendants' Concise Statement of Facts "DCSF," Doc. # 46, Ex. F.)

On April 28, 2005, Plaintiff again tried to apply for a firearm permit.

(PCSF, Ex. 2.)  On this occasion, the Maui Police Department declined to accept

Plaintiff's application for processing.  (Id.)  In the subsequent weeks, Plaintiff's

counsel sent two follow-up letters to Chief Phillips inquiring about his refusal to

accept Plaintiff's application and stating that legal action may be taken as a

recourse to Defendants' alleged wrongdoing.  (Id., Exs. 2–3.)  On October 3, 2005,

Defendants, through their counsel Moana Lutey ("Lutey"), filed a declaratory

judgment action against Plaintiff in the Second Circuit Court of Hawaii ("State

Court Action").  (Id., Ex. 7.)  In the State Court Action, Defendants sought a

2

judgment stating that Chief Phillips acted properly in denying Plaintiff's firearm application.  (Id.)

On March 27, 2007, Defendants filed a motion for summary judgment in the State Court Action, but withdrew their motion one month later on April 20, 2007.  (Plaintiff's Opposition, "Opp'n," Doc. # 51 at 3.)  On May 8, 2007, Plaintiff's counsel, Michael Ostendorp ("Ostendorp"), informed Defendants' counsel, Lutey, that there was no record of Plaintiff's conviction in Colorado and offered to subpoena Plaintiff's records from Summit County, Colorado.  (PCSF, Ex. 9.)  Subsequently, both Ostendorp and Lutey corresponded with the Summit County Court in an attempt to discern the truth about Plaintiff's criminal history in Colorado.  (PCSF, Exs. 11–12; DCSF, Exs. H–I.)

Various Summit County officials confirmed Ostendorp's assertion that Plaintiff had no conviction record, and that he could correctly represent that no conviction had been entered against him.  (PCSF, Exs. 11-12; DCSF, Exs. H–I.)  However, Lutey had in her possession conviction documents for Plaintiff, which had been obtained by Maui Police Department in the past.  (PCSF, Ex. 10.)  Accordingly, Lutey asked Allison Wishowski, a judicial assistant in Summit County, to authenticate these conviction documents.  (PCSF, Ex. 10.)  Wishowski certified the conviction documents, despite the fact that this directly contradicted

3

the prior statements and letters made by other Summit County officials indicating that Plaintiff had no conviction record in Colorado.  (DCSF, Ex. F.)  Given the contradictory nature of the information obtained from Summit County, Lutey contacted the clerk of the court seeking further clarification.  (Id., Ex. J.)  Christine Yuhas, the District Administrator of the Fifth Judicial District of Colorado, responded to Lutey's inquiry about Plaintiff's criminal record stating that "no such records exist with respect to [Plaintiff]," and attached the relevant Colorado statutes relating to sealing criminal records.  (Id., Ex. K.)

Defendants then filed a second motion for summary judgment in the State Court Action, which was heard before the Circuit Court on July 27, 2007. (PCSF, Ex. 22.)  The court denied Defendants' motion because they were concerned with granting summary judgment on the basis of Defendants' complaint, which asked the court to prohibit Plaintiff from owning a firearm under Hawaii statute.  (Id., Ex. 24.)  Defendants subsequently amended their complaint and requested judgment declaring that Chief Phillips properly exercised his discretion under Hawaii Revised Statutes Chapter 134 when he denied Plaintiff's

application for permit to acquire firearms.[1]  (DCSF, Ex. M.)  Defendants filed

another motion for summary judgment on September 28, 2007.  (PCSF, Ex. 16.)

On November 12, 2009, Plaintiff filed a complaint in this Court

The Circuit Court granted Defendants' motion and found that Maui

Police Department's denial of Plaintiff's 1999 application was valid.  However, the

court did not comment on the 2005 firearms permit application, despite the fact

that the 2005 application was the only issue in question, as Plaintiff had already

conceded to the validity of Chief Phillips denying his 1999 firearms permit

application.  (Id., Ex. 17.)  On November 2, 2009, the Intermediate Court of

Appeals ("ICA") reversed the Circuit Court's order and found for Plaintiff.  (Id.,

Ex. 18.)  The ICA opinion explained that the denial of Plaintiff's 1999 application

was moot, thus the Circuit Court had no jurisdiction to issue declaratory relief over

a moot issue.  (Id.)

On November 12, 2009, Plaintiff filed a complaint in this Court

against Maui County ("County"), Chief Phillips,[2] and Lutey.  (Complaint,

"Compl.," Doc. # 1.)  The Complaint, pursuant to 42 U.S.C. § 1983, alleged that

---

[1]H.R.S. Chapter 134, entitled "Firearms, Ammunition and Dangerous Weapons," governs the process by which a citizen can apply for and obtain a firearms permit.

[2]Thomas Phillips is now the former Chief of Police for Maui County, as he retired from the Maui Police Department on May 31, 2009.  (Reply at 12.)

Defendants violated Plaintiff's Second and Fourteenth Amendment rights, and

rights under the laws of the State of Hawaii.  (Id.)  On December 1, 2009, Plaintiff

filed a First Amended Complaint again alleging that Defendants denied his Second

and Fourteenth Amendment rights by unlawfully refusing to accept his firearm

permit application for "normal processing" under Hawaii Revised Statutes § 134-

2.[3]  (First Amended Complaint, Doc. # 6 at 2.)  Plaintiff also contended that the

purpose of Maui County's litigation against him was to "preclude [Plaintiff] from

seeking redress of his grievances concerning Maui County's refusal to accept his

application for processing due any such application."  (Id. at 5.)  Plaintiff's Second

Amended Complaint ("SAC") sought relief for violations of the First, Second, and

Fourteenth Amendments of the U.S. Constitution under 42 U.S.C. § 1983, and also

sought relief for a claim of malicious prosecution.[4]  (Seconded Amended

---

[3]H.R.S. § 134-2 states in relevant part, "The issuing authority shall perform
an inquiry on an applicant who is a citizen of the United States by using the
National Instant Criminal Background Check System before any determination to
issue a permit or to deny an application is made."  Haw. Rev. Stat. § 134-2

[4]Plaintiff's SAC makes several allegations of malicious prosecution, but fails
to clarify whether these claims are brought under state law or under federal law via
42 U.S.C. § 1983.  The Court interprets these allegations as stating a cause of
action for malicious prosecution under state law, and declines to analyze Plaintiff's
malicious prosecution claim under § 1983 because, even if Plaintiff properly
alleged malicious prosecution under § 1983, the claim would fail.  The Ninth
Circuit has previously held that malicious prosecution does not generally constitute
a deprivation of liberty without due process of law, and is thus not cognizable

Complaint, "SAC," Doc. # 35 at 2.)

On August 11, 2010, Defendants filed the instant Motion for

Summary Judgment ("Motion") along with a Concise Statement of Facts.  (Motion,

"Mot.," Doc. # 45; DCSF.)  On August 31, 2010, Plaintiff filed an Opposition to

---

under 42 U.S.C. § 1983 if process is available within the state judicial system to remedy the wrongs alleged.  Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985); Cline v. Brusett, 661 F.2d 108, 112 (9th Cir. 1981).  However, the Ninth Circuit has recognized an exception where malicious prosecution "is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights."  Bretz, 773 F.2d at 1031. The court in Bretz and Cline found constitutional violations to exist where "plaintiff alleged a conspiracy among state officials and private citizens to convict plaintiff on groundless charges and to deny plaintiff a fair trial."  Johnson v. Barker, 799 F.2d 1396, 1400 (1986) (citing Bretz, 773 F.2d at 1031; Cline, 661 F.2d at 112).  An example of such a constitutional violation involves plaintiffs who were deprived of liberty and denied a fair trial due to conspiracies involving bribery of witnesses, perjured testimony, and presentation of false evidence.  Id. The Ninth Circuit also found a constitutional deprivation of liberty and equal protection of the laws in a malicious prosecution case where plaintiff was arrested and criminally prosecuted in bad faith under circumstances involving racial slurs. Usher v. City of Los Angeles, 828 F.2d 556, 562 (1987).  The Ninth Circuit alternatively declined to find a constitutional deprivation of liberty due to malicious prosecution where a prosecutor scrambled to find charges to bring against appellants, but where nothing indicated that appellant was denied a fair trial.  Johnson, 799 F.2d at 1400–01.  In the instant case, Plaintiff's allegations state a cause of action for malicious prosecution, but nothing in the facts indicates that Defendants' behavior with regards to the alleged malicious prosecution gives rise to a deprivation of equal protection of the laws under the Ninth Circuit requirement for § 1983 malicious prosecution claims.  For these reasons, the Court construes Plaintiff's malicious prosecution claim under state law and not under § 1983.

Defendants' Motion and a Concise Statement of Facts.[5]  (Opp'n; PCSF.)

Defendants filed a Reply on September 7, 2010.  (Reply, Doc. # 53.)

STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as

to any material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th

Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A

main purpose of summary judgment is to dispose of factually unsupported claims

and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  The moving party has the initial burden of "identifying for the court the

portions of the materials on file that it believes demonstrate the absence of any

---

[5]In their Reply, Defendants argue that Plaintiff's Concise Statement of Facts ("CSF") did not respond to the facts laid out in Defendants' CSF and as such, all facts in Defendants' CSF should be deemed admitted.  The Court finds that Defendants' CSF does not paint a complete picture of the events that took place over a fifteen-year period, and where necessary, the Court must look to Plaintiff's CSF as well.

genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

If the moving party meets its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061

9

(9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

Where conflicting evidence is presented by both parties, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted).  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

I.   <u>Plaintiff's Second and Fourteenth Amendment Claims</u>

Defendants' Motion for Summary Judgment argues that Plaintiff's Second and Fourteenth Amendment claims are barred by the statute of limitations. (Mot. at 7.)

A.   Relevant Statutory Period

Plaintiff's Second and Fourteenth Amendment claims are brought under 42 U.S.C. § 1983, which provides a federal cause of action but does not include a relevant statutory period for such actions.  <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007).  Where federal law does not provide a statutory limitation for federal claims, courts must look to state law.  <u>Id.</u>  The applicable state statute of limitations depends on the type and characterization of the federal claim.  <u>Id.</u>  The Supreme Court held that § 1983 claims are best characterized as personal injury claims and thus should use the applicable personal injury statute of limitations found under state law.  <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985).

To determine the statute of limitations for Plaintiff's Second and Fourteenth Amendment claims, this Court looks to limitations periods under Hawaii law.  Haw. Rev. Stat. § 657-7.  Specifically, section 657-7 provides that "actions for the recovery of compensation for damage or injury to persons or

property shall be instituted within two years after the cause of action accrued." <u>Id.</u> As instructed in <u>Wilson</u>, this Court applies the two-year limit of Hawaii's general personal injury statute to Plaintiff's § 1983 claims.

      B.    Date of Accrual for Statutory Period

      When determining the accrual date for a § 1983 cause of action, courts must look to federal law rather than state law. <u>Wallace</u>, 549 U.S. at 388 ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."). Under the principles of federal law, it is "the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief'" <u>Id.</u> (citing <u>Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.</u>, 522 U.S. 192, 201 (1997)).

      Defendant argues that Plaintiff's Second and Fourteenth Amendment claims are based on the incident that occurred on April 28, 2005, where an employee of the Maui Police Department refused to accept Plaintiff's application for a gun permit, thus the statute of limitations begins on that date. (Mot. at 7.) Plaintiff argues that his claims did not accrue on the date the application was denied, but instead, that Defendants' continuing refusal to accept Plaintiff's application constitutes a continuing violation. (Opp'n at 9.) However, Plaintiff

alleges that he was denied a right to bear arms by Maui Police Department not accepting his firearm permit application, and that Maui Police Department's refusal to accept his application denied him his due process and equal protection rights. As such, Plaintiff's Second and Fourteenth Amendment claims derive from the single act of Defendants refusing to accept Plaintiff's firearm permit application, and Plaintiff could have filed suit from that point forward.   Thus, the continuing violation doctrine does not apply to the present situation.  See Nesovic v. United States, 71 F.3d 776, 778 (9th Cir. 1995) (defining the continuing wrong doctrine, and finding that the doctrine did not apply because "the wrong complained of was a single act, i.e., the assessment, which in turn created the lien and caused the harm"); Knox, 260 F.3d at 1013 (declaring that "this court has repeatedly held that a "mere 'continuing impact from past violations is not actionable'") (citation omitted); and Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002) (noting that the continuing wrong "doctrine applies where there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm," which was not the case there) (citation omitted).  Moreover, Plaintiff began threatening to bring a lawsuit shortly after April 28, 2005, thereby reinforcing the fact that he had a cause of action beginning on that date.  (DCSF, Ex. A.)

13

Plaintiff additionally raises the contention that a new cause of action was created when Defendants, in their Writ of Certiorari to the Hawaii Supreme Court, asserted that they did not need to inquire into Plaintiff's legal status before denying his new application.  (Opp'n at 10.)  However, this reasoning has no merit because Defendants' assertion in the Writ of Certiorari merely reiterated a prior argument, rather than creating a new cause of action.  See Travelers Fire Ins. Co. v. Ranney-Davis Mercantile Co., 173 F. 2d 844 (1949) (holding that "[a] cause of action arises from an invasion of a right or the violation of an obligation or duty.")  For the aforementioned reasons, the statute of limitations commences on April 28, 2005, and as Plaintiff's Complaint was not filed until November 12, 2009, Plaintiff's Second and Fourteenth Amendment claims are time barred.[6]

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Second and Fourteenth Amendment claims.

III.   Remaining Claim Under 42 U.S.C. § 1983

Plaintiff's remaining cause of action under § 1983 is a claim for violation of the First Amendment.  Plaintiff's First Amendment claim alleges that Defendants' declaratory judgment action "foreclose[d] him from seeking redress of

---

[6] Plaintiff does not raise the issue of equitable tolling, and as such, the Court does not reach this issue.

his grievances . . . and "deprived [him] of his First Amendment right "to petition

the Government for a redress of grievances."[7]  (SAC at 8.)  Section 1983 of Title

42 of the U.S. Code states:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage . . . subjects, or causes to be
> subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights; rather it is

the vehicle whereby plaintiffs can challenge actions by governmental officials."

Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004) (quoting

Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9th Cir. 2002))

(quotations omitted).  To state a claim under Section 1983, "'a plaintiff must show

(1) that the conduct complained of was committed by a person acting under color

of state law; and (2) that the conduct deprived the plaintiff of a federal

constitutional or statutory right.'"  Jensen v. City of Oxnard, 145 F.3d 1078, 1082

(9th Cir. 1998) (quoting Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989)).

---

[7]There is no indication that Chief Phillips was involved with the declaratory
judgment suit filed against Plaintiff in state court, which is the basis for Plaintiff's
First Amendment claim.  Thus, Chief Phillips is not relevant for the portion of the
instant Order involving Plaintiff's First Amendment claim.

In the instant case, Defendants contend that Plaintiff fails to allege sufficient facts to show municipal liability (Mot. at 28–30), and that qualified immunity bars Plaintiff's claim as to Lutey (Mot. at 21–27).  The Court will address these arguments in turn.

A.    Municipal Liability Against the County

For Plaintiff to bring a § 1983 claim against the County,[8] he must allege conduct by the County or Lutey in her official capacity that establishes municipal liability.  A plaintiff may not assert a claim under § 1983 merely by identifying conduct properly attributable to the municipality.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).  "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a

---

[8]The analysis for the remainder of the section on municipal liability only discusses the conduct of the County because "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Hafer v. Melo, 502 U.S. 21, 25 (1991) (quotations omitted) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.'" Id. (quoting Graham, 473 U.S., at 166).  Thus, the claim against Lutey in her official capacity is essentially a claim against the County.

16

direct causal link between the municipal action and the deprivation of federal rights." Id.

"[M]unicipalities may be held liable as 'persons' under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)).  "A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity'; (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" Id. (quoting Ulrich v. City & County of S.F., 308 F.3d 968, 984–85 (9th Cir. 2002)).

A plaintiff may therefore establish municipal liability by proving that the alleged constitutional violation was committed pursuant to a formal policy or custom that constitutes the standard operating procedure; that an official with

"final policy-making authority"[9] committed the constitutional tort; or "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."  Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992); see Monell, 436 U.S. at 690–91.  "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives."  Okla. City v. Tuttle, 471 U.S. 808, 823 (1985).  The word custom recognizes situations where the practices of officials are permanent and well settled.  See Adickes v. S. H. Kress & Co., 398 U.S. 144, 167–68 (1970).  Allegations of random acts, or single instances of misconduct, are insufficient to establish a municipal custom.  See Navarro v. Block, 72 F.3d 712, 714–15 (9th Cir. 1996); Thompson v. City of L.A., 885 F.2d 1439, 1443–44 (9th Cir. 1989).

All of Plaintiff's claims for relief under § 1983 are based on the allegation that "County Defendants under color of law, implemented, maintained, sanctioned and/or condoned policies, customs and/or practices that unlawfully denied Mr. Lundborg's Fourteenth Amendment right to due process, equal protection of the law, as well as his First and Second Amendment rights."  (Compl. at 2.)  However, Plaintiffs utterly fail to provide any facts describing how the

---

[9] "Whether a particular official has final policy-making authority is a question of state law."  Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).

18

County's actions constitute a policy or custom, and fail to provide any facts indicating that the State Court Action instituted against Plaintiff was a result of an official custom or policy.  If a plaintiff fails to support an essential element of a claim, "summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial." Celotex, 477 U.S. at 322–23 (emphasis added).

Alternatively, even in the absence of an official policy or custom, the Supreme Court has held that "an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).  Under this construct, however, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).  Moreover, "the fact that a particular official — even a policymaking official — has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  Id. at 481–82 (citing Oklahoma City v. Tuttle, 471 U.S. 808, 822–24 (1985)).

Here, Plaintiff makes no allegations whatsoever indicating that Lutey's decision to file the State Court Action against him was made with official policy-making authority.  Even if Plaintiff had properly made this allegation, it would be entirely factually unsupported, as Plaintiff has not shown any facts indicating that Lutey was in a policy-making position.  As such, there is no indication that Lutey was in an official policy-making position or that her decision to sue Plaintiff was a result of final municipal policy.  Again, "summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial."  Celotex, 477 U.S. at 322–23 (emphasis added).

Moreover, the County cannot be held liable for the actions of certain individuals, employees, or agencies under a theory of respondeat superior.  "The cases make clear that the unconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under [S]ection 1983." Gillette, 979 F.2d at 1347 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988) (observing that "[i]f the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability")); see also Monell, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.").

Plaintiff's allegations regarding municipal liability fail to state any genuine issue of material fact, and even taking the facts in the light most favorable to the non-moving party, are not enough to defeat a motion for summary judgment. See T.W. Electric Service, Inc., 809 F.2d at 630.  At most, Lutey's action was discretionary and cannot be attributed to the County in any way.  Accordingly, Defendants succeed on their Motion for Summary Judgment as to Plaintiff's § 1983 claim for violation of the First Amendment against the County and Lutey in her official capacity.

B.     Qualified Immunity for Individual Defendants

Defendants argue that Lutey, in her individual capacity, is entitled to qualified immunity on Plaintiff's § 1983 claim for violation of the First Amendment.  (Mot. at 21.)  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing the qualified immunity defense, the Court must determine: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of [the]

21

defendant's alleged misconduct." Pearson, 129 S. Ct. at 816. "Qualified immunity" is an immunity from suit, not a mere defense to liability. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The party asserting the affirmative defense of qualified immunity bears the burden of proving that defense. Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1988).

It is within the court's discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818; see Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009). In some circumstances, a court may choose to address the second prong first to determine whether there was a violation of a clearly established law before "turning to the more difficult question of whether the relevant facts make out a constitutional question at all." Mueller, 576 F.3d at 994 (quoting Pearson, 129 S. Ct. at 819). Here, the Court must first determine if Defendants violated Plaintiff's First Amendment right to petition the Government and, if so, whether that right was clearly established. As explained below, Defendants did not violate that constitutional right.

Plaintiff alleges that Defendants' State Court Action "foreclose[d] him from seeking redress of his grievances . . . and "deprived [him] of his First Amendment right 'to petition the Government for a redress of grievances.'" (SAC

22

at 8.)  Defendants argue that Plaintiff's First Amendment claim fails because he was not actually deprived of his right to petition the government.  (Mot. at 18.)

"The First Amendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition the government for redress of grievances . . . The government is prohibited from infringing upon these guarantees either by a general prohibition against certain forms of advocacy, or by imposing sanctions for the expression of particular views it opposes."  Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 464 (1979) (internal citations omitted).  A plaintiff may prove a violation of the right to petition the government by showing either that a government actor directly interfered with the right to present a grievance, or that a government actor imposed restrictions on the ability to present a grievance that had a "chilling effect" on the citizen's exercise of that right.  See O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996) (citing Laird v. Tatum, 408 U.S. 1, 11 (1972)).

Defendants argue that Plaintiff's First Amendment claim fails because he was not actually deprived of his right to petition the government.  (Mot. at 18.)  Plaintiff has made no showing as to how Lutey's actions directly interfered with or posed a deterring effect on Plaintiff's right to present a grievance.  Plaintiff has not alleged that he refrained from filing a separate suit or counterclaims against

23

Defendants because of the State Court Action, or identified any specific actions by Defendants that deterred him from filing suit.  Nothing in the facts presented to the Court evidences that it was not possible for Plaintiff to access the courts, or that Lutey's actions deprived Plaintiff of the right to petition the Government.  As such, Plaintiff's claim for violation of the First Amendment fails.

The second prong of the qualified immunity analysis requires Plaintiff to show that Lutey's "conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Spoklie v. Montana, 411 F.3d 1051, 1060 (9th Cir. 2005)  "A particular right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Ctr. for BioEthical Reform, Inc. v. L. A. County Sheriff Dep't, 533 F.3d 780, 793 (9th Cir. 2008) (citation omitted).  "If the controlling law is not clearly established, an official cannot be liable, because 'a reasonable person would not be expected to know how to structure his conduct to avoid liability.'"  Dela Cruz v. Kauai County, 279 F.3d 1064, 1069 (9th Cir. 2002) (citation omitted).  "If a reasonable official could have believed that his actions were lawful, summary judgment on the basis of qualified immunity is appropriate."  Hemphill v. Kincheloe, 987 F.2d 589, 593 (9th Cir. 1993) (citations omitted).

In the instant case, the issue of Plaintiff's conviction in Colorado was very much in doubt.  Plaintiff was convicted of reckless endangerment in 1986, and this conviction was the basis of the County denying his gun permit application in 1999.  (DCSF, Ex. D.)  However, in 2007, Ostendorp informed Lutey that there was no record of Plaintiff's conviction.  (PCSF, Ex. 9.)  Because Lutey had Plaintiff's conviction documents in her possession, she attempted to clarify the accuracy of Ostendorp's statement and received conflicting answers from various officials in Summit County, Colorado.  (PCSF, Exs. 10–12; DCSF, Exs. F, H–J.)  Due to the confusion over Plaintiff's conviction, Lutey's behavior was that of a reasonable official, and she is also entitled to qualified immunity as to Plaintiff's First Amendment claim for this reason.

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment claim under § 1983.

IV.   <u>State Law Malicious Prosecution</u>

Plaintiff's remaining grounds for relief are all state law claims, including a claim of malicious prosecution and a request for declaratory relief to possess a gun.  The Court, in its discretion, chooses to decline to extend supplemental jurisdiction over Plaintiff's state law claims.  28 U.S.C. § 1367(c)(3);

Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir. 2001); see also San Pedro Hotel Co., Inc. v. City of Los Angeles, 159 F.3d 470, 478 (9th Cir.1998) (holding that the district court is not required to provide explanation when declining jurisdiction under § 1367(c)(3)).  The Ninth Circuit has held that when "federal claims are dismissed before trial . . . pendant [sic] state claims also should be dismissed." Jones v. Community Redevelopment Agency, 733 F.2d 646, 651 (9th Cir. 1984). see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Ove v. Gwinn, 264 F.3d at 826.  Therefore, the Court finds that declining supplemental jurisdiction over Plaintiff's state law claims and dismissing them without prejudice is appropriate.

CONCLUSION

  For the reasons stated above, this Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's First, Second, and Fourteenth

Amendment claims, and **DISMISSES WITHOUT PREJUDICE** Plaintiff's state

law claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 30, 2010.



_____
David Alan Ezra
United States District Judge

Steve Lundborg v. Maui County et al., CV No. 09-00544 DAE; ORDER: (1)
GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; AND (2) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S
STATE LAW CLAIMS